SUPERIOR COURT FOR THE STATE OF WASHINGTON
FOR COUNTY OF KING

| | |
|---|---|
| RAE HANSEN, | NO. 21-2-09847-5 SEA |
| Plaintiff; | |
| v. | |
| | AMENDED COMPLAINT FOR |
| STANTEC CONSULTING SERVICES INC, | DAMAGES |
| Defendant. | |
| | JURY TRIAL DEMANDED |

COMES NOW Plaintiff RAE HANSEN, by and through her attorney of record, CHRISTOPHER J. STOCKWELL of STOCKWELL LAW FIRM PLLC, and hereby allege as follows:

## I.  PARTIES

1.1    Plaintiff Rae Hansen (hereinafter "Ms. Hansen" or "Plaintiff") is now and, at all times material hereto, was a resident of King County, Washington.

1.2    Defendant Stantec Consulting Services Inc (hereinafter "Stantec" or "Defendant") at all times material hereto has been a foreign profit corporation doing business in King County, Washington.

//

COMPLAINT FOR DAMAGES – 1

## II.      JURISDICTION & VENUE

2.1      The acts alleged herein occurred primarily in King County, Washington.

2.2      As a court of general jurisdiction, Plaintiff claims the superior court has personal and subject matter jurisdiction over the parties and claims alleged pursuant to RCW § 2.08.010.  Pursuant to § 4.12.025(3) and/or pursuant to any other applicable jurisdictional authority Plaintiff claims that jurisdiction is proper in the Superior Court for the State of Washington for County of King.  Plaintiff also claims jurisdiction is proper in Seattle Case Assignment Area pursuant to LCR 82(e).

2.4      Plaintiff has made arrangements to email complaint, summons, and other related initiating documents to Defendant's attorney, per agreement between Plaintiff's and Defendant's attorneys.

## III.      NATURE OF EMPLOYER

3.1      Defendant was, at all relevant times, engaged in trade and commerce in King County, Washington, and fits the definition of employer per RCW § 51.08.070.

## IV.      FACTS

4.1      In July 2019, Ms. Hansen was hired as an at will employee.  She reported to the Business Lead, Brian Norris.  Mr. Norris told Ms. Hansen not to worry about Associate status, because Stantec could easily change it later, and that her pay would be where she wanted at the end of the year with the yearly salary increase and bonus.

4.2      In September 2019, Ms. Hansen was notified of a reporting change from Mr. Norris to Richard Patterson, who reports to Jeff Brickner, who reports to Mr. Norris.  Reza Sehhati, Structural Lead, also reports to Mr. Patterson in the Bellevue Transportation Office.

Stockwell Law Firm PLLC
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.3     In October 2019, during performance evaluations, several women who report to Ms. Hansen complained that Mr. Sehhati and Mr. Patterson are very dismissive towards them.  Ms. Hansen had several conversations with Mr. Patterson, but he did not see it that way and told Ms. Hansen it was a miscommunication issue and that he would talk to Reza but that the women are being "overly sensitive."  Female staff continued to report more incidents to Ms. Hansen.

4.4     In November 2019, Ms. Hansen notified Mr. Norris that her supervisor, Mr. Patterson, was not supportive of the women in their group.  A triggering event happened for Ms. Hansen when Mr. Sehhati came in to her office, stood over her, and raised his voice at her the day after she had asked him to be sure to keep employee interviews confidential.  He accused Ms. Hansen of lying the previous day and told her that she was not following the Code of Conduct because such direction should come from his supervisor.  Mr. Patterson told Ms. Hansen afterward that it was a miscommunication issue and that she needed to be "more sensitive towards Reza."  Ms. Hansen first notified Mr. Patterson of this outburst, waited for his response, then notified Mr. Patterson's supervisor of the hostile environment and Mr. Sehhati's behavior towards her.  Mr. Norris, in turn, notified Ms. Hansen that he had elevated her complaint to HR.  Mr. Norris and Ms. Hansen had a phone conversation about it on December 3, 2019.

4.5     During December 2019, Ms. Hansen received no contact, update, or questioning by HR.

4.6     On January 7, 2020, Ms. Hansen asked the HR person, Eunice, what the status was.  Ms. Hansen was told that the investigation had not started.  On February 5, 2020, Ms. Hansen was informed by Eunice that the investigation was shifting from Eunice to Ashley

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

McKinlay in British Columbia, who would be investigating the complaint made in November. In January, Mr. Patterson was changed from reporting to Mr. Brickner to reporting to Tina Moschetti.

      4.7    In mid-February 2020, Ms. Hansen was told the investigation was complete.  A meeting with Mr. Sehhati, Mr. Patterson, Ms. McKinlay, and Ms. Hansen was held on February 18, 2020 in the Bellevue Office.

      4.8    During the February 18 meeting, Mr. Sehhati was told that his behavior was not appropriate.  Mr. Patterson's responsibilities as Mr. Sehhati's manager were not discussed.  Mr. Sehhati left, while Mr. Patterson and Ms. McKinlay remained to talk about the culture.  Ms. Hansen was not privy to any actions taken by Stantec in relation to Mr. Sehhati or Mr. Patterson.  Ms. Hansen asked that Mr. Patterson leave so she could talk with Ms. McKinlay, the HR representative, privately.  Ms. Hansen told Ms. McKinlay that there is a culture of Hostile Work Environment towards the women in the Transportation office, and that Mr. Patterson is party to it.

      4.9    They talked about it for a bit.  Ms. Hansen directed Ms. McKinlay to three other women to talk to.  Their meeting ended.  Ms. Hansen could see from her office that Ms. McKinlay and Mr. Patterson left the building together.  When Mr. Patterson came back, he came straight to Ms. Hansen's office.  He told her, he did not like what he'd heard.  That is, that Ms. Hansen had told HR they have a Hostile Work Environment.  It's clear that the HR representative must have told Mr. Patterson what Ms. Hansen had said during the one-on-one with her.

      4.10    During March and April 2020, the Hostile Work Environment incidents continued for Ms. Hansen and the other women.  For example, Brian Chase had missed a

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

deadline for Kali Dickerson's project.  When she tried to get his deliverables, he told her that he was too busy, and that she would have to wait.  In March, Mr. Patterson told Mr. Sehhati to give the Bellevue Office team update and introduce new employees on the team when Ms. Hansen was there to do so.  All of these events were reported to Mr. Patterson.  He did not take any action.  His response was the women should be less sensitive, and assume good intent.  During April, Ms. Hansen asked Ms. McKinlay, after another meeting, how the hostile work environment investigation was going, as none of the women had been interviewed to the best of her knowledge at that time.  She told Ms. Hansen that she had been too busy with COVID and staff separations.  Ms. Hansen asked that maybe at a minimum their group could have a virtual Unconscious Bias training session.  She said that was a good idea and she would look into it.

4.11    Also in March 2020, eight women and five men worked in the Bellevue Transportation Group.  Many women expressed frustration with the lack of support and hostile environment to Ms. Hansen who elevated issues to HR, Mr. Patterson and Stantec Leadership.  Ultimately, two women were laid off in spring 2020, one replaced by a man, and six left the company, leaving no remaining women in the group a year later.  Of the six men in the group, one was laid off and five remained a year later.

4.12    In May 2020, Ms. Hansen's complaints to Mr. Patterson's supervisor, Ms. Moschetti, continued.  Ms. Hansen was promoted to a Transportation Business Center Practice Lead ("BCPL") effective June 1, 2020 to be same title and responsibilities as Mr. Patterson, reporting to Ms. Moschetti.  Ms. Hansen received no salary increase, though Mr. Patterson made approximately 25% more than Ms. Hansen.  Ms. Hansen pointed this out to Ms. Moschetti, and she said she would look into it.  On June 11, 2020, Ms. Moschetti called

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

1  to tell Ms. Hansen that her officer level is changing to Senior Associate.  Ms. Hansen told her

2  that it should be the same as Mr. Patterson (Principal), but since the change was already

3  approved by Leadership, Ms. Moschetti wouldn't entertain a change to a level equal to Mr.

4  Patterson.  Ms. Moschetti also informed Ms. Hansen that HR had studied her request for

5  parity, and there was no pay inequity.  Ms. Moschetti also informed Ms. Hansen that she falls

6  in the range for her level.  Ms. Hansen found out later that Mr. Patterson was upgraded to a

7  Senior Principal.

8         4.13    In early June 2020, Ms. Hansen went to the Regional Lead, Sheina Hughes.

9  Ms. Hansen discussed with Ms. Hughes the inequity in roles; Mr. Patterson and Ms. Hansen

10  have the same job description, equal responsibility and expectations, but Mr. Patterson is so

11  focused on WSDOT Design Build projects that Ms. Hansen felt she was shouldering the load

12  and covering for him.  Ms. Hughes told Ms. Hansen that Mr. Patterson would be brought into

13  line, and that leadership is aware of his behavior.  On June 19, 2020, Ms. Hughes notified Ms.

14  Hansen that Stantec was not offering facilitated Unconscious Bias Training.

15         4.14    In July 2020, there was more of the same behavior towards female staff, to

16  include Ms. Hansen, with no action by Stantec.  Mr. Patterson and Jim McPherson met with

17  two city officials at a project site without including or informing their field construction

18  manager, Jadene Kearney.  Ms. Hansen requested adding a female structural engineer to a

19  project team, which was declined by Mr. Patterson so that a male could be assigned.  Mr.

20  Patterson and Mr. Sehhati sought to find work for the male structural engineer and not the

21  female.  During a project audit, Mr. Patterson called out Ms. Hansen for not completing

22  required pre- qualifications in front of staff and outside auditors when it was not her assigned

23  work or responsibility.  In August 2020, a big project was advertised for bid. Ms. Hansen was

the Project Manager ("PM"), and Mr. Patterson was the Design Manager ("DM").  Mr.

Patterson consistently undermined Ms. Hansen with their client by talking to their PM without

her, taking over PM responsibilities, belittling Ms. Hansen's work in front of the client and

the Stantec subcontractors. This continued into September and October.

     4.15    On or around September 10, 2020. Ms. Hansen told Ms. Moschetti that the

hostile work environment was horrible, and that she wanted separation from Mr. Patterson.

Ms. Hansen was tired of covering for him, and tired of the way he treated her one-on-one and

with others.  Ms. Hansen was contemplating leaving the firm.  Ms. Moschetti did not have

any solutions, and she stated she "…knows that Richard is disrespectful towards you and the

women."  Ms. Hansen told Ms. Moschetti that she would take the rest of the month off, so

Ms. Moschetti could have time to come up with some options for separation from directly

working with Mr. Patterson.  Ms. Hansen also indicated that she was willing to relocate.  Ms.

Moschetti agreed to that plan.

     4.16    By October 8, 2020, Ms. Moschetti had not provided any options to Ms.

Hansen.

     4.17    On or around October 30, 2020, Ms. Hansen sent Ms. Moschetti multiple

emails documenting Mr. Patterson's recent behavior.  Ms. Hansen told her that it would be

better if she was not on the project with Mr. Patterson anymore.

     4.18    On or around November 3, 2020, Ms. Moschetti named a replacement

Commercial Manager on the project.  Ms. Moschetti acknowledged all Ms. Hansen's emails,

responding that, she had forwarded them to HR.  Ms. McKinlay, the HR Representative,

scheduled a meeting with Ms. Hansen that afternoon.  There were no questions about the

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

events Ms. Hansen had written up; it was more about what Ms. Hansen wanted to do, how she was feeling, and why there was not pay inequity.

4.19    On or around November 10, 2020, Ms. Hansen called Mr. Patterson to see if he wanted to name a Deputy on the Fish Passage project.  Mr. Patterson told Ms. Hansen that he wasn't going to need one, and that he was expecting that Ms. Hansen would fill in for him, as he did not plan to work fulltime on the project.  That was the first Ms. Hansen had heard of that plan.  Mr. Patterson wondered why Ms. Moschetti had assigned a Commercial Manager to the project.  Ms. Hansen explained that it was a lesson learned from another project, and the decision was made by the risk management team.  Ms. Hansen told Mr. Patterson that it would be better.  Ms. Hansen sent a summary to Ms. Moschetti and let her know it was not her place to explain the situation to Mr. Patterson.  Ms. Moschetti agreed, but to the best of Ms. Hansen's knowledge never talked to him.

4.20    As far as Ms. Hansen knows, there has been no discussion with Mr. Patterson about the Hostile Work Environment that he cultivates.  Ms. Hansen's official complaint to Mr. Patterson's supervisor was in November 2019; her complaint to HR was on Feb 18, 2020.  Ms. Hansen's pay parity complaint to her supervisor at time of promotion was in late May and again in September on behalf of many of the women, including Ms. Hansen, in the Bellevue Transportation group.  Ms. Hansen still made approximately 25% less than Mr. Patterson and was still subjected to belittling, demeaning, and undermining behavior at the time of her departure from Stantec.  Some of the men working for Mr. Patterson also openly delivered work late as required in Ms. Hansen's and another female's projects, saying they were too busy or they had other priorities.  Also, they were dismissive towards the women in the group, and refused work or team assignments initiated by the women.

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

4.21     On December 8, 2020, Ms. Hansen had a Performance Review with her supervisor, Ms. Moschetti.  Ms. Moschetti used the job description for a BCPL for the basis of the review. During that review, there was no recognition of Ms. Hansen's request in September/October 2020 to have separation between Ms. Hansen and Mr. Patterson.  Ms. Hansen's supervisor wanted her to improve her collaboration with Mr. Patterson immediately. She wanted Ms. Hansen to work directly for Mr. Patterson as his Deputy on a named major project.  Her expectation was that Ms. Hansen address and resolve the internal issues with Mr. Patterson. In a second conversation with Ms. Hansen, Ms. Moschetti expressed that the situation should be resolved in two more months, or other alternatives should be considered. This forced collaboration was not reasonable considering the complaints that Ms. Hansen had made.

4.22     When Ms. Hansen asked about 2021 planned compensation, Ms. Moschetti explained that none of Ms. Hansen's Business Center Leadership team were approved for increases due to lack of project revenues in 2020.  Ms. Moschetti again explained that she'd asked HR in June to do a parity review of the compensation for all peers in Ms. Hansen's class.  Of the 48 in the review, Ms. Hansen was approximately in the middle (number 25). This probably did not take into account Ms. Hansen's thirty-six-years of experience, or the fact that her salary was still approximately 75% of Mr. Patterson's, and they all have the same Job Description.  Also, two other men in Ms. Hansen's office that had less responsibility, had a higher 2020 compensation than Ms. Hansen, and both received an increase in salary for 2021.  Ms. Hansen suffered lack of equal pay and suffered a lack of title parity for an extended period of time, as well as hostile work environment sex discrimination, and

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

retaliation on the basis of her sex and/or statutorily protected activity of complaining about pay and title inequity as a result of Stantec's actions.

4.23    To the best of Ms. Hansen's knowledge, of her sixty-nine BCPL peers at Stantec, only six were women.  Four had titles below a Principal, including Ms. Hansen.  Of the sixty-three men, only six had titles below a Principal.  In addition, Ms. Hansen's supervisor requested that Ms. Hansen not submit her performance review comments without discussing with Ms. Moschetti first, within a short deadline.  Because there was little time to make any substantive comments, this appeared to be an attempt to push Ms. Hansen into a position where it looks as though she accepted the pay inequity, as well as the expectation for her to resolve her expressed concerns and collaborate directly with Mr. Patterson and accept working in a hostile environment that was first reported a substantial time prior.

4.24    On or around January 19, 2021 Stantec offered to release Ms. Hansen with severance in exchange for a release statement.  On January 29, 2021, Ms. Hansen was notified that, effective immediately, she was to be demoted back to her original position as hired in 2019 and that she would not receive a yearly bonus.  She believes the demotion was retaliatory for declining the terms of severance, reporting a hostile work environment, asking for pay and title parity, asking for parity for the women in her group, and regularly providing examples of hostile incidents for over one year.

4.25    As the result of Defendant's actions, Ms. Hansen was constructively discharged, and her last day at Stantec was on or around February 17, 2021.

## V.    RETALIATORY DISCHARGE PER RCW § 49.60.210

5.1    Plaintiff re-alleges Paragraphs 1.1 through 4.25 and incorporates them herein as if set forth in full

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

5.2    The actions of Stantec constitute the commission of this statutory cause.  The

statute states in relevant part:

> (1) It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW § 49.60.210.

5.3    To establish a prima facie case for retaliatory discharge, a plaintiff must establish:

> In order to establish a prima facie case of retaliatory discharge, Kahn must show that she was engaged in a statutorily protected activity, that Salerno discharged her or took some other adverse employment action against her, and that retaliation was a substantial factor behind the adverse action. *Delahunty v. Cahoon,* 66 Wash.App. 829, 840–41, 832 P.2d 1378 (1992) (citing *Allison v. Housing Auth.,* 118 Wash.2d 79, 95, 821 P.2d 34 (1991).

*Kahn v. Salerno*, 90 Wn. App. 110, 128–29, 951 P.2d 321, 331 (1998).  [internal page number omitted].

5.4    The retaliation discharge claim should proceed with the burden shifting framework.  *See Alawi v. Sprint Nextel Corp.,* 544 F. Supp. 2d 1171, 1176 (W.D. Wash. 2008).

> Once a prima facie case is demonstrated, the burden shifts to Sprint to articulate a legitimate, nondiscriminatory reason for not hiring Ms. Alawi. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Chuang v. Univ. of California Davis, Bd. of Trustees,* 225 F.3d 1115, 1123–24 (9th Cir.2000). The burden then shifts back to Ms. Alawi to show that Sprint's stated reasons for rejecting her application were a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. Ms. Alawi need only raise a genuine issue of material fact to survive summary judgment, and she need not produce additional evidence of discrimination. *Id.*

*Id. at* 1177.

5.6    Ms. Hansen repeatedly informed others of a hostile environment.  She

informed numerous people over an extended period of time about this hostile environment,

which is made clear in the facts section of this Complaint.

COMPLAINT FOR DAMAGES – 11

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

5.7     We believe, based on the above authority and arguments that this is properly

pled claim, for which this Court can grant relief.

## VI.     RETALIATION PER RCW § 49.60.210

6.1     Plaintiff re-alleges Paragraphs 1.1 through 5.7 and incorporates them herein as

if set forth in full.

6.2     Based on the facts and evidence at present, it appears that Ms. Hansen was

illegally retaliated against.  The RCW states in relevant part:

> It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW § 49.60.210(1).

6.3     Washington's case law gives quite a bit of information defining how a
retaliation claim is proven:

> To make out a prima facie case of retaliation, Milligan must show that (1) he engaged in a statutorily protected activity, (2) DSHS took adverse employment action against him, and (3) there is a causal link between the activity and adverse action.

*Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418, 424 (2002).

6.4     The employer then has a burden to produce a legitimate non-discriminatory

reason ("LNDR") for the adverse employment action:

> First, the employee must make out a prima facie case of retaliation. *Milligan v. Thompson,* 110 Wash.App. 628, 638, 42 P.3d 418 (2002). This establishes a rebuttable presumption of discrimination. The evidentiary burden then shifts to the employer to produce admissible evidence of a legitimate, nondiscriminatory, nonretaliatory reason for the discharge. *Grimwood v. Univ. of Puget Sound, Inc.,* 110 Wash.2d 355, 363–64, 753 P.2d 517 (1988). Significantly, this is merely a burden of *production,* not a burden of *persuasion. Id.* at 364, 753 P.2d 517. If the employer fails to meet this burden, then the employee is entitled to an order establishing liability as a matter of law.

COMPLAINT FOR DAMAGES – 12

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

If the employer does provide a LNDR, the employee must rebut that reason as pretext for the underlying retaliation:

> The burden then shifts back to the employee to show that the employer's reason is pretext. *Estevez,* 129 Wash.App. at 798, 120 P.3d 579; *Scrivener,* 181 Wash.2d at 446, 334 P.3d 541. Once "the record contains *reasonable but competing* inferences of *both* discrimination *and* nondiscrimination, 'it is the jury's task to choose between such inferences.

*Boyd v. State, Dep't of Soc. & Health Servs.,* 187 Wn. App. 1, 12, 349 P.3d 864, 869 (2015) [quotations omitted].

6.5     In addition, disposing of a retaliation case on summary judgment, where the employer knows of the employee's statutorily protected activity is not an option for the defense:

> Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose.' " Proximity in time between the protected activity and the discharge, as well as satisfactory work performance and evaluations before the discharge, are both factors suggesting retaliation.  And if an employee establishes that he or she participated in statutorily protected opposition activity, the employer knew about the opposition activity, and the employee was then discharged, a rebuttable presumption of retaliation arises that precludes summary dismissal of the case

*Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 746–47, 332 P.3d 1006, 1013 (2014). [footnotes omitted].

6.6     Here, each element Ms. Hansen's retaliation claim is easily provable, and written discovery, specifically communications of the relevant personnel over the relevant time period, and deposition testimony from those people will only strengthen this claim. Establishing that Ms. Hansen engaged in the statutorily protected activity of making complaint(s) with HR about pay and title disparity, as well as a hostile work environment will be provable on the face of those documents that Plaintiff will be entitled to and/or deposition testimony; it will also be easy to establish that Stantec took adverse employment action against Ms. Hansen in the form of willfully ignoring her HR complaints for extended periods

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

of time, and failing to rectify those situation(s), as well as continuing to pay her less at a lesser

title than her male counterpart(s), and demoting Ms. Hansen on January 29, 2021.  Finally,

Plaintiff's counsel believes there is a causal link between the activity and the adverse

employment action, and a jury will decide if Ms. Hansen can establish her burden of proof

here.  However, deposition testimony of the relevant Stantec personnel, as well as discovery

of documents such as relevant emails will likely show that causal link.

6.7     We believe, based on the above authority and arguments that this is a properly

pled claim, for which this Court can grant relief.

//

## VII.     SEX DISCRIMINATION, HOSTILE WORK ENVIRONMENT PER RCW § 49.60.

7.1     Plaintiff re-alleges Paragraphs 1.1 through 6.7 and incorporates them herein as

if set forth in full.

7.2     The actions of Stantec and its vicariously liable agents constitute illegal sex
discrimination under Washington Law Against Discrimination ("WLAD").

7.3     Pursuant to RCW § 49.60.030(1)(a):

The right to be free from discrimination because of race, creed, color, national
origin, sex, honorably discharged veteran or military status, sexual orientation,
or the presence of any sensory, mental, or physical disability or the use of a
trained dog guide or service animal by a person with a disability is recognized
as and declared to be a civil right. This right shall include, but not be limited to
… The right to obtain and hold employment without discrimination.

7.4     Pursuant to RCW § 49.60.030(2):

Any person deeming himself or herself injured by any act in violation of this
chapter shall have a civil action in a court of competent jurisdiction to enjoin
further violations, or to recover the actual damages sustained by the person, or
both, together with the cost of suit including reasonable attorneys' fees or any
other appropriate remedy authorized by this chapter or the United States Civil
Rights Act of 1964 as amended.

7.5     Pursuant to RCW § 49.60.180:

COMPLAINT FOR DAMAGES – 14

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

> It is an unfair practice for any employer … To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability.

7.6     Washington State courts advise that, "Washington's law against discrimination is liberally construed to deter and eradicate discrimination. *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160,* 151 Wash.2d 203, 214, 87 P.3d 757 (2004)." *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 494, 205 P.3d 145, 158 (2009).  In order for a plaintiff to make a prima facie showing of employment discrimination alleging disparate treatment under Washington's Law Against Discrimination, he must prove four elements:

> (1) [T]he employee is a member of a protected class, (2) the employee is qualified for the employment position or performing substantially equal work, (3) the employee suffered an adverse employment action, and (4) similarly situated employees not in plaintiff's protected class received more favorable treatment.

*Matson v. United Parcel Serv., Inc.*, 872 F. Supp. 2d 1131, 1145 (W.D. Wash. 2012).

7.7     Additionally, the Supreme Court of the United States has long recognized sex-based stereotypes, and related adverse employment decisions as a valid basis for disparate treatment claims under Title VII.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S. Ct. 1775, 1791, 104 L. Ed. 2d 268 (1989); *inter alia.*

7.8     The defendant does then have the opportunity to proffer a LNDR to explain their adverse employment action(s):

> If … [Plaintiff] makes this prima facie showing, he must also show that the … [Defendant's] legitimate reasons for its actions were pretextual.

*Marin v. King Cty.*, 194 Wn. App. 795, 811, 378 P.3d 203, 213 (2016), *review denied sub nom. Marin v. King Cty., WA.*, 186 Wn.2d 1028, 385 P.3d 124 (2016).

COMPLAINT FOR DAMAGES – 15

7.9     Both Title VII, and Washington's Law Against Discrimination ("WLAD"). RCW § 49.60.030(1) cover illegal sex discrimination, and RCW § 49.60.030(2) lays out that an aggrieved person has a civil remedy at law for damages, to include attorney's fees in a court of competent jurisdiction.

7.10     In Washington State, there are two recognized claims for sexual harassment in the workplace, quid pro quo, and hostile work environment.  The standard to prove a prima facie case of hostile work environment is:

> (1) The harassment was unwelcome, (2) the harassment was because of sex, (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer. *Glasgow v. Ga–Pac. Corp.,* 103 Wash.2d 401, 406–07, 693 P.2d 708 (1985). The third element requires that the harassment be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment[,] ... to be determined with regard to the totality of the circumstances." *Glasgow,* 103 Wash.2d at 406–07, 693 P.2d 708.

*Antonius v. King Cty.*, 153 Wn.2d 256, 261, 103 P.3d 729, 732 (2004).

7.11     The longstanding unchecked incidents of hostile work environment that Ms. Hansen and other females have suffered at Stantec is indicative of a toxic gender-biased work environment.  Ms. Hansen is a member of a protected class, female; She is qualified for the employment position she held, and was performing substantially equal work to males who earned more money.  Ms. Hansen suffered adverse employment actions because of both the toxic masculinity and gender-biased culture at Stantec, as well as willful ignorance to her complaints of hostile work environment and refusal of Stantec to correct her pay and title disparity.  Two men with less responsibility actually had higher compensation in 2020 than did Ms. Hansen.

7.12     The harassment she has suffered from is unwanted; it is obviously because of her sex; it was sufficiently pervasive enough to alter the conditions of her employment and

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

create an abusive working environment.  And, this harassment is directly imputable to her employer Stantec, who is vicariously liable for the actions of its employees, superior, subordinate, or in an equal position to Ms. Hansen, through the doctrine of Respondeat Superior.  As these actions indeed occurred within the scope of the bad actors' employment. Ms. Hansen will be able to establish each element of her prima facie case on this claim, and any alleged legitimate non-discriminatory reason proffered by Stantec will not be believable.

7.13    We believe, based on the above authority and arguments that these are properly pled claims, for which this Court can grant relief.

## VIII.   DISCRIMINATION AND GENERAL VIOLATIONS PER THE WASHINGTON EQUAL PAY AND OPPORTUNITIES ACT

8.1    Plaintiff re-alleges Paragraphs 1.1 through 7.13 and incorporates them herein as is set forth in full.

8.2    Stantec violated the Washington's Equal Pay and Opportunities Act ("WEPA") when it hired and maintained Ms. Hansen in an equal position as male(s), while paying her approximately 25% less than at least one male with equal responsibilities.  Plaintiff also alleges that her compensation was less than two males with less responsibility.

8.3    In Washington State:

(1) Any employer in this state who discriminates in any way in providing compensation based on gender between similarly employed employees of the employer is guilty of a misdemeanor. If any employee receives less compensation because of discrimination on account of gender in violation of this section, that employee is entitled to the remedies in RCW 49.58.060 and 49.58.070. In such action, however, the employer shall be credited with any compensation which has been paid to the employee upon account.

(2) For purposes of this section, employees are similarly employed if the individuals work for the same employer, the performance of the job requires similar skill, effort, and responsibility, and the jobs are performed under similar working conditions. Job titles alone are not determinative of whether employees are similarly employed.

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

1   RCW §49.58.020(1) & (2).

2       8.4     In addition:

3
4   The legislature finds that equality of opportunity for advancement is key to reducing income disparities based on gender. The legislature further finds that using gender as a factor in advancement contributes to pay inequity.

5
6   An employer may not, on the basis of gender, limit or deprive an employee of career advancement opportunities that would otherwise be available…

7
8   If it is determined that an employer committed a pattern of violations of this section as to an employee or committed a violation of this section through application of a formal or informal employer policy or practice, the employee is entitled to the remedies in this section and in RCW 49.58.070.

9
10  RCW §49.58.030(1), (2), & (4)(a).

11
12      8.5     WEPA also enumerates remedies as follows:

13
14  Subject to subsection (2) of this section, an employee may bring a civil action against an employer for violation of RCW 49.58.020 and 49.58.030 through 49.58.050 for actual damages; statutory damages equal to the actual damages or five thousand dollars, whichever is greater; interest of one percent per month on all compensation owed; and costs and reasonable attorneys' fees. The court may also order reinstatement and injunctive relief. The employee must bring a civil action within three years of the date of the alleged violation of this chapter regardless of whether the employee pursued an administrative complaint. Filing a civil action under this chapter shall terminate the director's processing of the complaint under RCW 49.58.030 or 49.58.060. Recovery of any wages and interest owed must be calculated from four years from the last violation prior to the date of filing the civil action.

15
16
17
18
19
20  An employee alleging a violation of RCW 49.58.030 is entitled to relief only if the court determines that the employer committed a pattern of violations as to the employee or committed a violation through application of a formal or informal employer policy or practice.

21
22
23  RCW §49.58.070(1) & (2).

24      8.6     Per Ms. Hansen's factual assertions, Stantec paid Ms. Hansen less than at least

25  one male counterpart, Mr. Patterson, despite having equal or greater experience and skills.

26  She also claims she made approximately 25% less than Mr. Patterson.  Stantec also employed

at least two males in the Bellevue Transportation group with less responsibility, and a higher compensation than Ms. Hansen in 2020. Again, it is worth noting, Ms. Hansen has thirty-six-years of experience.  Ms. Hansen was also not equal in title to Mr. Patterson, while both had the same responsibilities.  Ms. Hansen suffered lack of equal pay and title parity because of the actions of Stantec.

8.7     Ms. Hansen believes she was hired at a lower salary than Mr. McPherson in their group, but she had more responsibility.  Ms. Hansen believes she was hired a little higher than Mr. Sehhati, but that his compensation was adjusted months later to elevate him above Ms. Hansen.  And after promotion, Ms. Hansen's salary was approximately 75% of Mr. Patterson's with identical responsibility and nearly identical sales goals, which neither of them achieved in 2020.

8.8     We believe, based on the above authority and arguments that these are properly pled claims, for which this Court can grant relief.

## IX.     RETALIATION PER WASHINGTON EQUAL PAY AND OPPORTUNITIES ACT

9.1     Plaintiff re-alleges Paragraphs 1.1 through 8.8 and incorporates them herein as is set forth in full.

9.2     Stantec violated the Washington's Equal Pay and Opportunities Act ("WEPA") when it hired and maintained Ms. Hansen in an equal position as at least one male, while paying her approximately 25% less than that male with equal responsibilities, and maintaining her with less compensation than two males with less responsibility.

9.3     WEPA also makes retaliation on the basis of protected activity under this statute:

An employer may not retaliate, discharge, or otherwise discriminate against an employee because the employee has filed any complaint, or instituted or caused to be instituted any proceeding under this chapter, or has testified or is about to

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

testify in any such proceeding, or because of the exercise by such employee on behalf of himself or herself or others of any right afforded by this chapter.

RCW § 49.58.050.

9.4     It also appears that Ms. Hansen may have been retaliated against in violation of this statute for bringing pay disparity to the attention of her superior(s) and HR.  To the best of Ms. Hansen's knowledge, of her sixty-nine Transportation BCPL peers, only six are women.  Four had titles below a Principal, including Ms. Hansen.  Of the sixty-three Transportation BCPL men, only six have titles below a Principal.  The institutional gender disparity at Stantec in pay, title, and role is obvious on its face.  Deposition testimony, and written discovery will reveal what the true extent of the gender pay disparity gap is at Stantec.

9.5     We believe, based on the above authority and arguments that these are properly pled claims, for which this Court can grant relief.

## X.     CONSTRUCTIVE WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

10.1     Plaintiff re-alleges Paragraphs 1.1 through 9.5 and incorporates them herein as if set forth in full.

10.2     The actions of Stantec constitute the commission of this tort claim.   WPI330.52 reads:

Constructive discharge occurs when an employer deliberately creates working conditions so intolerable that a reasonable person in the shoes of the employee would feel compelled to *[resign] [retire]*.

To establish constructive discharge,(name of plaintiff)must prove the following:

1. That the defendant deliberately made working conditions intolerable for [him] [her];

2. That a reasonable person in [his] [her] position would be forced to *[resign] [retire]*;
3. That [he] [she] *[resigned] [retired]* because of the conditions and not for any other reason; and

COMPLAINT FOR DAMAGES – 20

4. That [he] [she] suffered damage as a result of being forced to *[resign] [retire]*.

WPI330.52Wrongful Termination in Violation of Public Policy—Constructive Discharge—Burden of Proof, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.52 (7th ed.).

WPI 330.51, which is used when plaintiff claims discharge in violation of one of the four categories listed in the first paragraph of the instruction, and it states:

> To recover on [his] [her] claim of wrongful termination in violation of public policy,(name of plaintiff)has the burden of proving that a substantial factor motivating the employer to terminate [his] [her] employment was [his] [her] [refusing to commit an unlawful act] [performing a public duty] [exercising a legal right or privilege] [reporting what [he] [she] reasonably believed to be employer misconduct].
>
> If you find from your consideration of all of the evidence that(name of plaintiff)has not met this burden, then you must find for the defendant(name of employer)[on this claim].
>
> If you find from your consideration of all of the evidence that(name of plaintiff)has met this burden, then you must find for plaintiff(name of plaintiff)[on this claim].

WPI330.51Wrongful Termination in Violation of Public Policy—Burden of Proof, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.51 (7th ed.).

10.3    A plaintiff must prove the elements of what is known as the Perritt Test only where the case does not fit into one of four scenarios.  Mr. Hansen's case falls squarely in more than one of the four categories.  The four categories can be seen in our Supreme Court's case law as well as cited here:

> In *Thompson v. St. Regis Paper Co.,* we adopted the tort of wrongful discharge in *723 violation of public policy as a narrow exception to the at-will doctrine. **843 102 Wash.2d 219, 232-33, 685 P.2d 1081 (1984). We held that to prevail on a cause of action, a plaintiff employee must demonstrate that his or her "discharge may have been motivated by reasons that contravene a clear mandate of public policy." *Id.* at 232, 685 P.2d 1081. Then, "the burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee." *Id.* at 232-33, 685 P.2d 1081. The tort for wrongful discharge in violation of public policy has generally been limited to four scenarios: "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege,

COMPLAINT FOR DAMAGES – 21

such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing." *Gardner v. Loomis Armored, Inc.,* 128 Wash.2d 931, 936, 913 P.2d 377 (1996) (citing *Dicomes v. State,* 113 Wash.2d 612, 618, 782 P.2d 1002 (1989) ).

*Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722–23, 425 P.3d 837, 842–43 (2018).

    The *Gonzaga* went on to say the following:

However, in *Becker* and *Rose,* we clarified that the Perritt framework should not be applied to a claim that falls within one of the four categories of wrongful discharge in *724 violation of a public policy. *Becker v. Cmty. Health Sys., Inc.,* 184 Wash.2d 252, 258-59, 359 P.3d 746 (2015) ("When the plaintiffs case does not fit neatly within one of these scenarios, a more refined analysis may be necessary, and the four-factor Perritt analysis may provide helpful guidance. But such detailed analysis is unnecessary here." (footnote and citation omitted) ); *Rose v. Anderson Hay & Grain Co.,* 184 Wash.2d 268, 277-78, 287, 358 P.3d 1139 (2015)

*Id.* at 191 Wn.2d 712, 723–24, 425 P.3d 837, 843 (2018).

    10.4    It is also well established that this tort may be based on either express or

constructive discharge:

A cause of action for wrongful discharge in violation of public policy is a tort claim and is subject to a three-year statute of limitations. *Danny v. Laidlaw Transit Servs., Inc.,* 165 Wash.2d 200, 207, 193 P.3d 128 (2008); RCW 4.16.080(2). The action may be based on "either express or constructive" discharge. *Snyder v. Med. Serv. Corp. of E. Wash.,* 145 Wash.2d 233, 238, 35 P.3d 1158 (2001) (citing *Riccobono v. Pierce County,* 92 Wash.App. 254, 263, 966 P.2d 327 (1998)); *see also Korslund v. DynCorp Tri–Cities Servs., Inc.,* 156 Wash.2d 168, 177 n. 1, 125 P.3d 119 (2005) ("we find no compelling reason why the tort cannot be based on constructive discharge"). To establish constructive discharge, an employee must show that an employer engaged in a deliberate act, or a pattern of conduct, that made working conditions so intolerable that a reasonable person would have felt compelled to resign. *Sneed v. Barna,* 80 Wash.App. 843, 849–50, 912 P.2d 1035, *review denied,* 129 Wash.2d 1023, 919 P.2d 600 (1996). This is an objective standard and an "employee's subjective belief that he had no choice but to resign is irrelevant." *Travis v. Tacoma Pub. Sch. Dist.,* 120 Wash.App. 542, 551, 85 P.3d 959 (2004).

*Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 485, 302 P.3d 500, 505 (2013).

    10.5    The State of Washington has a clear public policy of protecting workers when

they complain of discrimination, retaliation, and unequal pay.

COMPLAINT FOR DAMAGES – 22

10.6     Here, Plaintiff must prove that a substantial factor motivating the employer to terminate her employment was her exercising her legal right or privilege to be free from discrimination, retaliation, hostile work environment, and unequal pay, and for her reporting what she reasonably believed to be employer misconduct related to these things.

10.7     The substantial factor element is established by the fact that Ms. Hansen repeatedly informed her superiors of a hostile environment.  She informed numerous people over an extended period of time about this hostile environment.

10.8     Ms. Hansen had several conversations with Mr. Patterson about Mr. Sehhati and Mr. Patterson being very dismissive toward several women who reported to Ms. Hansen. Ms. Hansen notified Mr. Norris that Mr. Patterson was not supportive of the women in their group.  Mr. Patterson told Ms. Hansen that Mr. Sehhati raising his voice at her was a miscommunication.  In January 7, 2020, Ms. Hansen asked Eunice in HR what the status of her complaint that Mr. Norris had elevated in November 2019 was, and was told the investigation had not started.  After the investigation was finally complete, the Hostile Work Environment continued.  Ms. Hansen continued to complain of this behavior.  Ms. Hansen was promoted to the same title and responsibilities as Mr. Patterson, with no salary increase, while Mr. Patterson made approximately 25% more than her.  In September 2020, Ms. Hansen again complained to Ms. Moschetti, and told her she wanted separation from Mr. Patterson, but nearly a month later, Ms. Moschetti had provided no options to Ms. Hansen. There was not even any recognition of this separation issue during Ms. Hansen's performance review with Ms. Moschetti on December 8, 2020.  Stantec never adequately dealt with any of Ms. Hansen's complaints, which in addition to the totality of her experiences at Stantec, resulted in her constructive termination.

**Stockwell Law Firm PLLC**
600 Stewart Street Suites 300 & 400
Seattle, WA 98101-1257
(206) 323-0580

10.9    It seems clear that Stantec never had any intention of dealing with the hostile work environment created by Mr. Patterson and others at Stantec.  Nor does it appear that it ever intended to adequately analyze or rectify Ms. Hansen's pay parity issue.  It is also clear that these situations and circumstances are substantial factors in Ms. Hansen's ultimate constructive termination, i.e., they are substantial factors motivating Stantec's decision to constructively terminate her.

10.10   We believe, based on the above authority and arguments that this is a properly pled claim, for which this Court can grant relief.

## XI.    EQUITABLE REMEDIES

11.1    Plaintiff has no complete remedy at law for the damages she has suffered and continues to suffer as the result of Stantec's actions, and requests equitable relief including, but not limited to, injunctions, support in her unemployment claim, back pay, and front pay.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

A.    Declare that the Defendant's acts are violations of the alleged causes of action herein;

B.    Permanently enjoin the Defendant from engaging in the acts described herein;

C.    Order Defendant to support Ms. Hansen's unemployment claim.

D.    Award Plaintiff's attorney costs and fees, as well as economic and non-economic, compensatory, and emotional distress/general damages, and/or any other damages allowable under the causes of action alleged herein;

E.    Award Plaintiff prejudgment interest at the rate of 12% per annum, allowable under RCW § 19.52.020(1);

COMPLAINT FOR DAMAGES – 24

1

F.       Provide any other relief that the Court determines is just and equitable.

2

3       DATED this 9th day of August 2021.

4

5

6                                                           Respectfully Submitted,

7

8

9

10

11

12                                          By_____
                                            Christopher J. Stockwell, Esq.
13                                              Attorney for Plaintiff
                                                  WSBA # 50001
14                                          Stockwell Law Firm PLLC
                                                600 Stewart Street
15                                              Suites 300 & 400
                                            Seattle, WA 98101-1257
16                                            Direct: (253) 459-4818
                                             Office: (206) 323-0580
17                                    Email: chris@stockwelllawfirm.com

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DAMAGES – 25                              **Stockwell Law Firm PLLC**
                                                    600 Stewart Street Suites 300 & 400
                                                        Seattle, WA 98101-1257
                                                            (206) 323-0580

SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR
THE COUNTY OF KING

HANSEN

vs.

STANTEC CONSULTING
SERVICES INC

Case No.: 21-2-09847-5 SEA

CERTIFICATE OF E-SERVICE

(AFSRS)

I, Christopher Stockwell, certify that I initiated electronic service of the following document(s) on the parties listed below who have consented to accept electronic service via the King County eFiling Application.  Service was initiated on August 09, 2021 at 06:03:38 PM.

Document(s):

  1.   AMENDED COMPLAINT

Parties:

  1.   Christopher Stockwell, Attorney for Petitioner/Plaintiff
        email: chris@stockwelllawfirm.com

Executed this 9th day of August, 2021.

s/ Christopher Stockwell
WSBA #:    50001
600 Stewart Street
300 & 400
Seattle, WA 98101
(253) 459-4818
chris@stockwelllawfirm.com

CERTIFICATE OF E-SERVICE - 1